# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-08-00435-CV

**Texas Department of Public Safety, Appellant**

**v.**

**Joshua Jack Nail, Appellee**

## FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT
## NO. 15,973, HONORABLE V. MURRAY JORDAN, JUDGE PRESIDING

## O P I N I O N

We grant the Texas Department of Public Safety's (DPS's) motion for rehearing, withdraw our opinion and judgment dated June 24, 2009, and substitute the following in its place. We dismiss DPS's motion for reconsideration en banc as moot.

Joshua Jack Nail was arrested and subsequently charged with the misdemeanor offense of furnishing alcohol to a minor. Pursuant to a plea bargain, Nail pled nolo contendere to the charge and received thirty days' deferred adjudication with a fine and court costs. After he served this term of deferred adjudication and the charge was dismissed, Nail sought to expunge records relating to his arrest. Over the opposition of DPS, the district court granted expunction. DPS appeals. The principal issue on appeal concerns whether Nail presented legally sufficient evidence that he received "court ordered community supervision under Article 42.12" for purposes of

paragraph B of article 55.01(a)(2)(B), code of criminal procedure, so as to preclude expunction. *See*

Tex. Code Crim. Proc. Ann. art. 55.01(a)(2)(B) (West 2006). Concluding that Nail did not meet his

burden, we reverse the district court's expunction order and render judgment that Nail take nothing

on that claim.

    We recently summarized the principles that govern the availability of the expunction

remedy in Texas:

> Expunction—the remedy through which a person who has been arrested for the commission of an offense can have all information about the arrest removed from the State's records—is not a constitutional or common-law right, but purely a statutory privilege. *See Heine v. Texas Dep't of Pub. Safety*, 92 S.W.3d 642, 648 (Tex. App.—Austin 2002, pet. denied); *McCarroll v. Texas Dep't of Pub. Safety*, 86 S.W.3d 376, 378 (Tex. App.—Fort Worth 2002, no pet.); *Harris County Dist. Attorney v. Lacafta*, 965 S.W.2d 568, 569 (Tex. App.—Houston [14th Dist.] 1997, no pet.). Article 55.01(a) of the code of criminal procedure creates a cause of action through which a person can establish an entitlement to expunction. *See* Tex. Code Crim. Proc. Ann. art. 55.01(a); *Heine*, 92 S.W.3d at 648. Although article 55.01 is located in the code of criminal procedure, the cause of action it creates is civil rather than criminal in nature. *Texas Dep't of Pub. Safety v. J.H.J.*, 274 S.W.3d 803, 806 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Article 55.01 imposes a number of conditions or elements that the petitioner has the burden of proving; unless the petitioner meets each element, there is no right to the expunction remedy. *Id.*; *Harris County Dist. Attorney's Office v. Hopson*, 880 S.W.2d 1, 3 (Tex. App.—Houston [14th Dist.] 1994, no writ). The trial court must strictly comply with the statutory requirements, and has no equitable power to expand the remedy's availability beyond what the legislature has provided. *Lacafta*, 965 S.W.2d at 569; *Harris County Dist. Attorney's Office v. M.G.G.*, 866 S.W.2d 796, 798 (Tex. App.—Houston [14th Dist.] 1993, no writ). Conversely, if the petitioner demonstrates that he has satisfied each of the requirements under article 55.01(a), the trial court has a mandatory duty to grant the expunction petition. *Heine*, 92 S.W.3d at 648.

*T.C.R. v. Bell County Dist. Attorney's Office*, No. 03-08-00627-CV, ___ S.W.3d ___, 2009 Tex.

App. LEXIS 6136, at *2-4 (Tex. App.—Austin Aug. 6, 2009, no pet.).

In his petition for expunction, filed on May 6, 2008, Nail pled that he was arrested on March 28, 2005, for the offense of making alcohol available to a minor, a class A misdemeanor. *See* Tex. Alco. Bev. Code Ann. § 106.06 (West 2007). Nail sought expunction of records relating to this arrest under the following provisions of code of criminal procedure article 55.01(a):

> Art. 55.01. RIGHT TO EXPUNCTION. (a) A person who has been placed under a custodial or noncustodial arrest for commission of either a felony or misdemeanor is entitled to have all records and files relating to the arrest expunged if:
>
> * * *
>
> (2) each of the following conditions exist:
>
> (A) an indictment or information charging the person with commission of a felony has not been presented against the person for an offense arising out of the transaction for which the person was arrested or, if an indictment or information charging the person with commission of a felony was presented, the indictment or information has been dismissed or quashed, and:
>
> (i) the limitations period expired before the date on which a petition for expunction was filed under Article 55.02; or
>
> (ii) the court finds that the indictment or information was dismissed or quashed because the presentment had been made because of mistake, false information, or other similar reason indicating absence of probable cause at the time of the dismissal to believe the person committed the offense or because it was void;
>
> (B) the person has been released and the charge, if any, has not resulted in a final conviction and is no longer pending and there was no court ordered community supervision under Article 42.12 for any offense other than a Class C misdemeanor; and
>
> (C) the person has not been convicted of a felony in the five years preceding the date of the arrest.

3

Tex. Code Crim. Proc. Ann. art. 55.01(a)(2). Regarding paragraph A of article 55.01(a)(2), Nail alleged that after his arrest, he was charged with the class A misdemeanor offense of furnishing alcohol to a minor. *See id*. art. 55.01(a)(2)(A); *State v. Beam*, 226 S.W.3d 392, 394 (Tex. 2007) (where petitioner is charged only with misdemeanor, paragraph A is satisfied because, by definition, "indictment or information charging the person with commission of a felony has not been presented"). Nail additionally pled that he "has not been convicted of a felony in the 5 years preceding the date of his arrest," as paragraph C requires. *See* Tex. Code Crim. Proc. Ann. art. 55.01(a)(2)(C). Concerning paragraph B, Nail alleged that "[t]he charges against Petitioner arising out of the transaction for which Petitioner was arrested did not result in a final conviction and are no longer pending." *See id*. art. 55.01(a)(2)(B). As for the paragraph's additional requirement that "there was no court ordered community supervision under Article 42.12,"[1] Nail pled that he "completed a term of unsupervised deferred adjudication."[2]

The sole party to file a responsive pleading was DPS, which filed a general denial as well as an "affirmative defense" disputing whether Nail could satisfy paragraph B's requirement

---

[1] Because Nail was charged with a class A misdemeanor, the exception to this requirement for community supervision imposed for class C misdemeanors is not at issue. *See* Tex. Code Crim. Proc. Ann. art. 55.01(a)(2)(B) (West 2006) ("[T]here was no court ordered community supervision under Article 42.12 for any offense other than a Class C misdemeanor.").

[2] Nail attached an affidavit in which he averred that he had not been convicted of a felony in the five years preceding March 28, 2008—the requirement of paragraph C—but he did not verify any of the other factual allegations in his petition. *See id*. art. 55.02, § 2 (West Supp. 2008) (expunction petition "must be verified").

In addition to his expunction claim, Nail pled in the alternative for an order of non-disclosure under section 411.081 of the government code. *See* Tex. Gov't Code Ann. § 411.081 (West Supp. 2008).

4

that he had not received "court ordered community supervision under Article 42.12." DPS attached copies of documents from Nail's criminal proceeding (cause no. 13161 in the constitutional county court of Llano County), including the sworn complaint, information, and "Judgment on Plea of Guilty or Nolo Contendere Before Court; Waiver of Jury Trial—Deferred Adjudication of Guilt." The latter consists of a preprinted form with handwritten additions and deletions. It reflects that pursuant to a plea bargain, Nail pled nolo contendere to and was found guilty of the offense of furnishing alcohol to a minor and received thirty days' deferred adjudication (also termed "deferred judgment" within the document), an $800 fine, and $206 in court costs. The following portions of the order addressed adjudication of Nail's guilt and punishment:[3]

> Thereupon, and upon the ___ day of _____, _____, the Court, having heard and considered all the evidence submitted for the State and the Defendant is of the opinion and so finds ~~that the Defendant is eligible for probation and that the ends of justice and~~ the best interests of both the public and the Defendant will be served by the Court's deferring further proceedings without entering an adjudication of guilty at this time ~~by the Court placing the Defendant on probation under the supervision of the Court~~.

> IT IS, THEREFORE CONSIDERED, ORDERED AND ADJUDGED by the Court that a final adjudication of guilt, assessment of punishment and pronouncement of sentence be deferred [sic] the good behavior of the defendant~~, and that the defendant _____ be and is hereby placed on probation for a term of _____ beginning on the date of the judgment herein under the supervision of the Court, through the Adult Probation Department of Llano County, Texas, subject to the terms and conditions set out in the attached "Terms and Conditions of Probation" and any supplements thereto.~~

> The defendant was informed that on violation of a condition of his ~~probation~~ *judgment* that he may be arrested and detained as provided by law; that he is entitled

---

[3] Handwritten additions to the order are signified below by italics, while handwritten deletions are signified by strikeouts.

5

to a hearing limited to a determination by the Court of whether it proceeds with an adjudication of guilt on the original charge; that no appeal may be taken from this determination; that after adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, ~~granting of probation,~~ and appeal continue as if the adjudication of guilt had not been deferred.

IT IS ORDERED that ~~the Clerk of the Court or the Probation Officer furnish a copy of this judgment, together with a copy of the attached "Terms and Conditions of Probation" and any Supplements thereto to the Defendant and not the date of delivery of such copy on the docket, and that upon receipt of a copy of this judgment by the Defendant~~, the Defendant is released ~~upon probation~~ as authorized by law.[4]

At the expunction hearing,[5] Nail's counsel represented to the district court that his client and the prosecutor had entered into a plea bargain whereby "Nail would receive a deferred adjudication in this case and the contemplation at the time of the plea bargain was that this would be done in a manner that would enable Josh Nail to proceed to an expunction." He added that Nail had been required to pay a fine and that "[t]he case was dismissed after the completion of a 30 day deferred adjudication." Nail then called the prosecutor to testify. She verified that counsel's statements were true and correct. The prosecutor elaborated that "the judgment" did not require Nail "to report and it was—it was sort of like a Class C misdemeanor, you pay a fine and court costs and that's it." The prosecutor added that she agreed not to oppose expunction if Nail had no criminal

---

[4] In addition to challenging whether Nail could meet the requirements of paragraph B, DPS specially excepted to Nail's failure to verify any factual allegations in his expunction petition other than those pertaining to paragraph C, among other asserted defects.

DPS also asserted a plea to the jurisdiction to Nail's alternative request for relief under government code section 411.081, urging that Nail was required to seek that relief in the court of conviction, the constitutional county court of Llano County. In the alternative, DPS moved to transfer the section 411.081 claim to the court of proper venue.

[5] *See* Tex. Code Crim. Proc. Ann. art. 55.02, § 2(c) (West Supp. 2008).

history ("he was a good boy," as she put it) between the time of the agreement and expunction. During cross-examination by the Department's counsel, the prosecutor acknowledged that the county court's "judgment" referred to the disposition as both "deferred judgment" and "deferred adjudication," and that Nail had remained under threat of arrest if he did not comply with "the good behavior under the court's ruling." She insisted, however, that "his only condition was that he pay the fine and court costs." No other evidence was introduced by either party.

The district court granted Nail's petition, finding specifically that the charges against Nail "were dismissed, and did not result in a conviction, that the charges are no longer pending, that there was no court-ordered supervision of [Nail] under Art. 42.12, that [Nail] has been released from custody and bond on this charge, and that [Nail] has not been convicted of a felony within 5 years of the date of his arrest." *See* Tex. Code Crim. Proc. Ann. art. 55.01(a)(2). The Department appealed. In two issues, the Department asserts only that the district court abused its discretion in granting expunction because Nail failed to present legally sufficient evidence that "there was no court ordered community supervision under Article 42.12," as required by paragraph B of article 55.01(a)(2).[6] We agree that the district court abused its discretion in granting expunction.

We review a trial court's order granting or denying expunction for "abuse of discretion." *See Heine*, 92 S.W.3d at 646. In general, "abuse of discretion" means the trial court

---

[6] We thus express no opinion as to whether Nail met his burden as to any other element under article 55.01(a)(2), *see, e.g.*, *Texas Dep't of Pub. Safety v. Borhani*, No. 03-08-00142-CV, 2008 Tex. App. LEXIS 7509, at *9-10 (Tex. App.—Austin Oct. 3, 2008, no pet.) (mem. op.) (emphasizing that once DPS filed general denial to petitioner's expunction petition, expunction petitioner "must present evidence to substantiate his pleadings in order to prevail"), or any other potential basis for holding that the district court abused its discretion in granting expunction.

acted "without reference to any guiding rules or principles." *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). However, to the extent an expunction ruling turns on a question of law, we review it de novo because a "trial court has no 'discretion' in determining what the law is or applying the law to the facts," *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992), and, therefore, "abuses its discretion" if it misinterprets or misapplies the law. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008); *Walker*, 827 S.W.2d at 840.

When reviewing a challenge to the legal sufficiency of the evidence, we review the evidence in the light most favorable to the judgment, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We will sustain a legal sufficiency complaint if the record reveals: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *See id*. at 810.

Under paragraph B of article 55.01(a)(2), Nail had the burden of adducing legally sufficient evidence that the county court's order imposed "no court ordered community supervision under Article 42.12." *See* Tex. Code Crim. Proc. Ann. art. 55.01(a)(2)(B). To determine whether Nail met this burden, therefore, we must first determine what "court ordered community supervision under Article 42.12" as used in paragraph B means. Statutory construction presents a question of law that we review de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the legislature's intent. *See id*. We seek

8

that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). "When text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Shumake*, 199 S.W.3d at 284; *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006)). We consider the words in context, not in isolation. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008) (citing *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004); *Taylor v. Firemen's & Policemen's Civil Serv. Comm'n*, 616 S.W.2d 187, 189 (Tex. 1981); *University of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004)); *see Entergy Gulf States, Inc.*, 282 S.W.3d at 437 ("This general rule [that text is determinative of legislative intent] applies unless enforcing the plain language of the statute as written would produce absurd results"; also recognizing that legislative definitions of terms control over their ordinary meaning); Tex. Gov't Code Ann. § 311.011 (West 2005) ("[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage"). We should also read every word, phrase, and expression in a statute as if it were deliberately chosen, and likewise presume that words excluded from the statute are done so purposefully. *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied). Our analysis of the statutory text is also informed by the presumptions that "the entire statute is intended to be effective" and that "a just and reasonable result is intended," Tex. Gov't Code Ann. § 311.021(2) & (3) (West 2005), and consideration

of such matters as "the object sought to be attained," "circumstances under which the statute was enacted," legislative history, and "consequences of a particular construction." *Id*. § 311.023(1), (2), (3), (5) (West 2005). However, only when the statutory text is ambiguous "do we 'resort to rules of construction or extrinsic aids.'" *Entergy Gulf States, Inc.*, 282 S.W.3d at 437 (quoting *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007)).

The "Article 42.12" referenced in paragraph B of article 55.01(a)(2) is article 42.12 of the code of criminal procedure, the article that governs "community supervision," the current statutory term for what is still commonly known as "probation." *See generally* Tex. Code Crim. Proc. Ann. art. 42.12 (West Supp. 2008). Article 42.12 defines "community supervision" as:

> the placement of a defendant by a court[7] under a continuum of programs and sanctions, with conditions imposed by the court for a specified period during which:
>
> (A)     criminal proceedings are deferred without an adjudication of guilt; or
>
> (B)     a sentence of imprisonment or confinement, imprisonment and fine, or confinement and fine, is probated and the imposition of sentence is suspended in whole or in part.

*Id*. art. 42.12, § 2(2). Thus, "community supervision" as defined in article 42.12 entails (1) judicial "placement of a defendant . . . under a continuum of programs and sanctions, with conditions

---

[7] "Court" under article 42.12 is limited to "a court of record having original criminal jurisdiction." Tex. Code Crim. Proc. Ann. art. 42.12, § 2(1) (West Supp. 2008).

imposed by the court"; (2) "for a specified period during which" either "criminal proceedings are deferred without an adjudication of guilt" or a sentence is "probated" and its imposition suspended.

As this definition reflects, the legislature has authorized trial courts governed by article 42.12 to impose "community supervision" in two basic situations. First, community supervision may be imposed by a trial court following conviction as an alternative to a sentence of imprisonment or confinement—what is frequently termed "regular" probation or "regular" community supervision. *See id*. art. 42.12, §§ 2(2)(B), 3 ("judge ordered community supervision"); *see also id*. art. 42.12, § 4 ("jury recommended community supervision"). The second is "deferred adjudication," also termed "deferred adjudication probation" or "deferred adjudication community supervision," under section 5 of article 42.12: "when in the judge's opinion the best interest of society and the defendant will be served, the judge may, after receiving a plea of guilty or plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on community supervision." *See id*. art. 42.12, § 5(a).

The "conditions" for "community supervision," *see id*. art. 42.12 § 2(2), are addressed primarily in section 11 of article 42.12. Section 11 requires that "[t]he judge of the court having jurisdiction of the case shall determine the conditions of community supervision." *Id*. art. 42.12, § 11(a). As for what these "conditions" may be, section 11 further provides that "[t]he judge may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant." *Id*. Such conditions specifically "may include, but shall not be limited to," conditions that the defendant shall "commit no offense

11

against the laws of this State or of any other State or of the United States," "[p]ay[ing] the defendant's fine, if one be assessed, and all court costs," *id*. art. 42.12, § 11(a)(1), (8), and numerous others. Although these specified conditions of "community supervision" also include some that entail active, literal supervision by the State, *see id*. art. 42.12, § 11(a)(4) ("Report to the supervision officer as directed by the judge or supervision officer and obey all rules and regulations of the community supervision and corrections department"), (5) ("Permit the supervision officer to visit the defendant at the defendant's home or elsewhere"), "community supervision" plainly does not require the imposition of those sorts of conditions.

In the case of deferred adjudication, the "continuum of programs and sanctions," *see id*. art. 42.12, § 2(2), in the event of the defendant's failure to comply with the court-ordered conditions can include arrest and the court's proceeding to adjudicate guilt. *See id*. art. 42.12 § 5(b) ("[o]n violation of a condition of community supervision imposed under Subsection (a) of this section," defendant may be arrested and detained and hearing held on issue of whether court will proceed to adjudicate guilt on original charge). Conversely, if the defendant successfully completes the term of deferred adjudication, the charges are dismissed without a final conviction. *See id*. art. 42.12, § 5(c).

Texas courts—including this Court—have uniformly held that court orders that impose deferred adjudication impose "court ordered community supervision under Article 42.12" within the meaning of article 55.01(a)(2), at least when the order imposes one or more of the "conditions" under article 42.12, section 11. *See, e.g.*, *Texas Dep't of Pub. Safety v. Jacobs*, 250 S.W.3d 209, 211 (Tex. App.—Dallas 2008, no pet.) (trial court committed error apparent on

12

face of record in granting expunction where defendant "admitted at the expunction hearing that he served deferred adjudication probation"); *Texas Dep't of Pub. Safety v. Wallace*, 63 S.W.3d 805, 808 (Tex. App.—Austin 2001, no pet.) (after noting that trial court had imposed "terms and conditions of [Wallace's] community supervision," holding that "deferred-adjudication constitutes 'court ordered community supervision' under article 42.12 for purposes of the expunction statute and renders a defendant ineligible for expunction of arrest records"); *see also Texas Dep't of Pub. Safety v. Moran*, 949 S.W.2d 523, 527 (Tex. App.—San Antonio 1997, no pet.) (Green, J.) (under prior version of expunction statute that required "no court ordered probation," holding that "deferred adjudication is court ordered probation regardless of [defendant's] testimony that he was not under any court-imposed conditions other than paying a fine and court costs"); *State v. Knight*, 813 S.W.2d 210, 212 (Tex. App.—Houston [14th Dist.] 1991, no writ) (under prior version of statute, "Deferred adjudication probation under Article 42.12, § 5, Texas Code of Criminal Procedure constitutes a 'court ordered probation' for purposes of article 55.01(2)"); 43B George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* §§ 48.29-.30, at 277 (2d ed. 2001) (acknowledging general "rule that one is not entitled to expunction upon successful completion of a term of deferred adjudication"); *but cf. id.* §§ 48.30, .32, .33 (relying on *State v. R.B.*, 699 S.W.2d 296 (Tex. App.—Dallas 1985, no writ), in suggesting that "narrow" exception to this rule may exist if trial court imposes "unsupervised and unconditional" deferred adjudication).[8]

---

[8] In *State v. R.B.*, 699 S.W.2d 296 (Tex. App.—Dallas 1985, no writ), the defendant pled nolo contendere to two misdemeanor DWI offenses, received deferred adjudication, and later sought to expunge records relating to the charges. At the time, the predecessor to paragraph B required that there be no "court ordered supervision under Article 42.13, Code of Criminal Procedure." *See* Act of May 27, 1979, 66th Leg., R.S., ch. 604, 1979 Tex. Gen. Laws 1333 (amended 1989) (current

13

version at Tex. Code Crim. Proc. Ann. art. 55.01(a)(2)(B)). This "Article 42.13" was a provision of the code of criminal procedure that addressed misdemeanor "probation," including both regular "probation" and deferred adjudication "probation." *See* Act of May 28, 1979, 66th Leg., R.S., ch. 654, 1979 Tex. Gen. Laws 1514, *repealed by* Act of May 21, 1985, 69th Leg., R.S., ch. 427, 1985 Tex. Gen. Laws 1531. Thus, article 42.13 was addressed to "probation," not the current nomenclature of "community supervision," and the expunction statute required no "court ordered *supervision* under Article 42.13." Decisions construing these versions of the statutes held that "court ordered supervision under Article 42.13," while not requiring the appointment of a probation officer or the imposition of conditions requiring or entailing active or literal supervision of the defendant, did require that the court "supervise" the defendant at least in the sense that it impose one or more conditions for which the defendant remained accountable to the court during his or her probation period. *See, e.g.*, *Ex parte P.D.H.*, 823 S.W.2d 791, 792-93 (Tex. App.—Houston [14th Dist.] 1992, no writ); *Texas Dep't of Pub. Safety v. P.E.*, 794 S.W.2d 604, 607 (Tex. App.—Austin 1990, no writ); *Meyers v. State*, 675 S.W.2d 798, 799 (Tex. App.—Dallas 1984, no writ); *Texas Dep't of Pub. Safety v. Failla*, 619 S.W.2d 215, 217 (Tex. Civ. App.—Texarkana 1981, no writ).

In *R.B.*, neither deferred-adjudication order imposed an express condition of probation but, to the contrary, explicitly provided that "there shall be no Court ordered supervision or probation of Defendant under Article 42.13 of the Code of Criminal Procedure." 699 S.W.2d at 297-98. The State argued that the orders nonetheless contained an implied condition of probation: because the orders reserved the right to proceed to an adjudication of guilt or alternatively to dismiss the proceeding if the trial court determined that dismissal would be in the best interest of society and of the defendant, the orders "necessarily implie[d] as a condition of dismissal rather than an adjudication of guilt that dismissal could not be in the best interest of society and of the defendant." *Id*. at 298. The court of appeal rejected that argument. It reasoned that "[t]o hold, as the State would have us do, that a deferred adjudication always carries with it an implied condition of probation would mean that one who had received deferred adjudication would never be entitled to expunction because there would always be court-ordered supervision. Such an interpretation would rob of any meaning the provision that expunction is to be granted when there is no court-ordered supervision." *Id*.

In 1985, article 42.13 of the code of criminal procedure was merged into article 42.12, *see* Act of May 21, 1985, 69th Leg., R.S., ch. 427, 1985 Tex. Gen. Laws 1531, and, in 1989, the expunction statute's reference to "court ordered supervision under Article 42.13" was changed to "court ordered probation under Article 42.12." *See* Act of May 29, 1989, 71st Leg., R.S., ch. 803, § 1, 1989 Tex. Gen. Laws 3666, 3667. Thus, as of the 1989 amendments, the expunction statute used the same term—"court ordered *probation* under Article 42.12"—that the legislature used to describe that which was imposed under article 42.12—"probation"—rather than the narrower "court ordered *supervision*" that was the linchpin of the *R.B.* court's analysis. The legislature has generally

14

In addition to relying on the statutory text, these decisions have cited the traditional policy goal underlying the expunction remedy—to provide relief from the consequences of wrongful arrests. *See Moran*, 949 S.W.2d at 527 ("The expunction statute was 'not intended to allow a person who is arrested, pleads guilty to an offense, and receives probation after pleading guilty to expunge his record." (quoting *Knight*, 813 S.W.2d at 212)). Although the legislature over time has changed other portions of article 55.01(a)(2) from this traditional "mistake" expunction model or policy toward more of a "rehabilitation" model, it has not done so with paragraph B, as we have recently observed. *See T.C.R.*, 2009 Tex. App. LEXIS 6136, at *29-30.

On appeal, DPS, relying on cases such as *Wallace*, argues that Nail received "court ordered community supervision under Article 42.12" as a matter of law because the prosecutor testified at the hearing—and Nail's counsel admitted—that Nail received thirty days' "deferred adjudication" in connection with his arrest for furnishing alcohol to a minor. Also, relying on *Moran*, DPS emphasizes that the county court's order also imposed an $800 fine and court costs and made dismissal versus final adjudication of guilt contingent on Nail's "good behavior"—i.e., a

---

maintained this relationship between the two provisions. After the legislature extensively revised article 42.12, including renaming "probation" as "community supervision," *see* Act of June 19, 1993, 73d Leg., R.S., ch. 900, § 4.01, 1993 Tex. Gen. Laws 3716, it made a conforming amendment to change the expunction statute's reference to "court ordered probation under Article 42.12" to its current "court ordered community supervision under Article 42.12." *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1236, § 1, 1999 Tex. Gen. Laws 4279. In light of these intervening amendments, several decisions involving expunction and deferred adjudication have concluded that *R.B.* is no longer authoritative. *See Texas Dep't Pub. Safety v. Moran*, 949 S.W.2d 523, 527 (Tex. App.—San Antonio 1997, no pet.); *State v. Knight*, 813 S.W.2d 210, 212 (Tex. App.—Houston [14th Dist.] 1991, no writ). We need not address the continued applicability of *R.B.* because even under its reasoning, as we explain above, Nail did not receive unconditional deferred adjudication.

15

"condition" under article 42.12.  *See Moran*, 949 S.W.2d at 527 ("deferred adjudication is court ordered probation regardless of [defendant's] testimony that he was not under any court-imposed conditions other than paying a fine and court costs").  We agree with DPS that, on this record, Nail failed to adduce legally sufficient evidence that he had "no court ordered community supervision under Article 42.12" within the meaning of paragraph B.

At the expunction hearing, the prosecutor testified without dispute that the county court's judgment placed Nail on deferred adjudication and under threat of arrest if he failed to comply with "good behavior," with the "condition" being that "he pay the fine and court cost." As the prosecutor suggested, "[p]ay[ing] the defendant's fine, if one is assessed, and all court costs" is one of the "basic conditions" of "community supervision" under article 42.12.  Tex. Code Crim. Proc. Ann. art. 42.12, § 11(a)(8 ).  Furthermore, as the prosecutor acknowledged, the judgment imposed made Nail's completion of deferred adjudication contingent on his satisfaction of that condition. This is "community supervision" under article 42.12.  *See* Tex. Code Crim. Proc. Ann. art. 42.12, §§ 2(2), 5(b).

The prosecutor did indicate that Nail "paid his fine and court cost, I believe, the day that we entered into the judgment."  However, there is no evidence to support a reasonable inference that Nail's obligation to pay the fine was independent of his deferred adjudication.  *See* 43B Dix & Dawson, § 48.30, at 277 (cautioning that *R.B.* "exception," if it applies under the current expunction statute, could apply only if "[a]ny actions required of the defendant—such as . . . payment of a fine and costs of court . . . must be completed before the trial court places him on unsupervised and unconditional deferred adjudication").  In fact, the prosecutor's undisputed testimony established

16

the contrary—that Nail was required to pay the fine as a condition of his deferred adjudication—and there was no contrary evidence before the district court.[9]

In arguing to the district court that he did not receive "court ordered community supervision under Article 42.12,"[10] Nail relied on the assertions that the county court's order did not require him to "report" to a probation officer and that he was, therefore, not "supervised." As previously demonstrated, although section 11 of article 42.12 authorizes a court to impose conditions requiring active or literal supervision by the State, "court ordered community supervision under Article 42.12" is not limited to and does not require such conditions. To the contrary, the condition imposed during Nail's deferred adjudication term—that Nail pay a fine and court costs—suffices to establish "court ordered community supervision under Article 42.12." *See Moran*, 949 S.W.2d at 527.[11] Consequently, there is legally insufficient evidence to support the district court's finding

---

[9] *See, e.g.*, *Borhani*, 2008 Tex. App. LEXIS 7509, at *9-10 (emphasizing that once DPS filed general denial to petitioner's expunction petition, expunction petitioner "must present evidence to substantiate his pleadings in order to prevail" and cannot rely on his or her verified petition). Although attached to DPS's responsive pleading, the county court's "Judgment on Plea of Guilty or Nolo Contendere Before Court; Waiver of Jury Trial—Deferred Adjudication of Guilt" was not admitted into evidence at the expunction hearing. However, were we to assume that the district court took judicial notice of it, it is consistent with the prosecutor's testimony that Nail was required to pay the fine and court costs as a condition of successfully completing his deferred adjudication. The order explicitly requires Nail to make the payments and further provides that he was admonished that "on violation of a condition of his ~~probation~~ *judgment* that he may be arrested and detained as provided by law . . . ."

[10] Nail did not file an appellee's brief on original submission, nor has he filed a response to the Department's motion for rehearing.

[11] *See also P.E.*, 794 S.W.2d at 607 ("In order to constitute court ordered supervision" under the narrower version of the expunction statute applied in *R.B.*, "a defendant need only be ordered to comply with conditions; it is not necessary to require that he report to a probation officer." (quoting *Meyers*, 675 S.W.2d at 799)).

17

of "no court ordered community supervision under Article 42.12." And, because Nail did not meet his burden as to each of the statutory requirements of article 55.01(a)(2), the district court abused its discretion in granting Nail's expunction petition.

During the expunction hearing, the district court voiced concern that Nail's plea might be invalid if Nail had acted under the impression that he would later be able to obtain expunction in connection with the offense. Nail's counsel also emphasized such facts as Nail's background as "a fire fighter and an EMT" with no criminal history and that his charge stemmed from "a loud music call" concerning "a party at his house" at which alcohol was being served while minors were present. The issue before us in this proceeding, however, is whether the district court abused its discretion in granting Nail's expunction petition in light of the governing statutory requirements he had the burden to satisfy and the evidentiary record. These statutory requirements, and the policy judgments they embody, are the prerogative of the legislature. The judiciary has no power to deviate from them to either expand or limit the expunction remedy based on its perception of the equities or for any other reason. *See T.C.R.*, 2009 Tex. App. LEXIS 6136, at *3.

The dissent offers no valid criticism of the foregoing analysis. It repeatedly emphasizes that an "abuse-of-discretion" appellate standard of review applies here as if this standard singularly requires deference to whatever the trial court decided. To the contrary, to state that an appellate issue is governed by an "abuse-of-discretion" standard of review is merely to beg the question of how broad or narrow the trial court's discretion regarding the issue was. Here, as previously explained, the legislature has defined and limited by statute the trial court's discretion to grant expunction, and it is beyond dispute that statutory construction presents a question of law that

18

we review de novo, *see Shumake*, 199 S.W.3d at 284, and that trial judges have zero discretion to misinterpret or misapply the law. *Perry Homes*, 258 S.W.3d at 598; *Walker*, 827 S.W.2d at 840. The "undisputed facts"quoted by the dissent demonstrate, as a matter of law, that the county court imposed a "condition" (and, therefore, "community supervision") through Nail's "deferred judgment"/deferred adjudication under the meaning of the expunction statute and the code of criminal procedure—payment of a fine and court costs—or at least that there is legally insufficient evidence to support the contrary finding Nail was required to obtain. *See Moran*, 949 S.W.2d at 527. The dissent's portrayal of the record as indicating otherwise appears rooted in the premise—stated more explicitly in its memorandum opinion on original submission—that "community supervision" requires active, literal supervision by the State. That is not the law, as previously explained. *See id.* Nor does the fact that the parties to the criminal proceeding may have intended or "hoped" that the "deferred judgment" would avoid the prohibition against expunction where "community supervision" has been imposed—something the dissent also emphasizes—control whether it did. The legislature has provided no such exception to the "community supervision" expunction limitation, and the judiciary has no power to create one.

We reverse the district court's judgment and render judgment that Nail take nothing on his expunction claim. Furthermore, pursuant to DPS's prayer for relief, we order all documents that were turned over to the district court, or to Nail or his counsel, be returned to the submitting agencies. *See Ex parte Elliot*, 815 S.W.2d 251, 252 (Tex. 1991) (per curiam) (reversal of expunction applies to all respondents in trial court, even if they did not participate in appeal).

19

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop;
    Dissenting Opinion by Justice Patterson

Reversed and Rendered on Motion for Rehearing

Filed:   January 8, 2010